1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMES MARTIN SANCHEZ,**<br><br>Petitioner,<br><br>**v.**<br><br>**ANTHONY HEDGEPETH, Warden,**<br><br>Respondent. | **Case No. 1:11-cv-01043 LJO MJS (HC)**<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a state prisoner with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is represented by William L. Schmidt.  Respondent is represented by Justain P. Riley of the office of the Attorney General.

**I.      PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction on jury trial on January 13, 2007, for several counts of sexual assault on a child and associated crimes. (Lodged Doc. 1.) Petitioner was sentenced to an indeterminate sentence of thirty-one (31) years to life in state prison.  (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

1 | District, which was denied on July 21, 2008.  (Lodged Doc. 2.)

2 |     Petitioner proceeded to file collateral appeals of his conviction in state court.

3 | Relevant to this petition, on August 28, 2009, Petitioner filed a petition for writ of habeas

4 | corpus in the Fresno County Superior Court; it was denied on October 13, 2009.

5 | (Lodged Docs. 3-4.) On December 11, 2009, Petitioner filed a state petition with the

6 | California Court of Appeal, Fifth Appellate District; it was denied on June 10, 2010.

7 | (Lodged Docs. 5-6.)  Finally, Petitioner filed a petition with the Supreme Court of

8 | California on August 9, 2010; it was denied on May 11, 2011.  (Lodged Docs. 7-8.)

9 |     Petitioner filed the instant federal habeas petition on June 22, 2011.  (Pet., ECF

10 | No. 1.)   In it he alleges that he was denied effective assistance of counsel due to

11 | defense counsel's failure to object to the introduction of improper evidence and failure to

12 | object to two instances of prosecutorial misconduct.  (Id. at 5.)  Additionally, Petitioner

13 | alleges that  appellate counsel was ineffective based on his failure to raise a claim of

14 | prosecutorial misconduct on appeal, failure to raise claims of ineffective assistance of

15 | counsel on appeal, and failure to petition for a rehearing due to an error in the Court of

16 | Appeal opinion.  (Id. at 5-6.)

17 |     Respondent filed a motion to dismiss on November 28, 2011, but it was

18 | subsequently withdrawn.  (ECF Nos. 14, 18.)  Respondent filed an answer on April 19,

19 | 2012, and Petitioner filed a traverse on June 20, 2012.  (ECF Nos. 23, 27.)

20 | **II.**   **STATEMENT OF THE FACTS[1]**

21 |
22 |     On the morning of January 10, 2005, 13-year-old B.R. skipped school with L.S., who is appellant's daughter, and another girl. They went to Samantha Nelson's residence and smoked marijuana.

23 |
24 |
25 |
26 |     Later that day, B.R. went to L.S.'s house and the girls went into L.S.'s bedroom. About 10 minutes later, appellant entered the room and told L.S. to go feed their dogs. After L.S. left, appellant told B.R. that he had a surprise for L.S. and wanted B.R.'s opinion about it. Appellant led B.R. to the master bedroom and locked the door. He asked B.R. if she ever smoked drugs. B.R. replied in the negative. Appellant showed B.R. a

27 | [1]The Fifth District Court of Appeal's summary of the facts in its July 21, 2008 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

28 |

film canister containing rocks of cocaine. Appellant smoked a rock of cocaine. B.R. tried to leave, but appellant blocked her path. She asked appellant to let her go, but he refused. Then appellant told B.R. she could leave if she went into the bathroom, took off her underwear, and gave it to him. B.R. refused. Appellant blew cocaine smoke into her face. Appellant told B.R. to be quiet so L.S. would not hear. Appellant attempted to remove B.R.'s pants and underwear. When B.R. tried to get up, appellant pushed her down and tried to pull her legs apart. B.R. started screaming for help. Appellant removed his pants, got on top of B.R. and attempted to insert his penis into her vagina. B.R. continued to struggle and appellant finally said, "Okay. I won't." Then he said, "I'll just finger you and eat you." He slid one or two fingers into her vagina. He licked her vagina and penetrated it with his tongue. Appellant asked B.R. if what he was doing felt good. She replied that it did not. She grabbed a cordless telephone and attempted to dial 911, but appellant took the telephone away from her.

Meanwhile, L.S. finished feeding the dogs. Hearing noises coming from the master bedroom, L.S. knocked on the door. B.R. called out to her. L.S. opened the door. She and two younger brothers went into the room. L.S. told appellant to get off of B.R. Appellant told L.S. to leave. B.R. got up and ran toward the open bedroom door. Appellant unsuccessfully tried to close the door. B.R. ran out of the house.

A neighbor saw B.R. running down the street. B.R. yelled, "Please help me. My best friend's dad just tried to rape me." The neighbor saw L.S. holding B.R.'s pants and calling for her to come back. The neighbor took B.R. into her house and called the police.

L.S. ran to Samantha's residence and pounded on the door. Samantha testified that L.S. was hysterical. L.S. told Samantha that "my dad tried to rape B.R.." Samantha walked L.S. down the street to some police officers. L.S. gave a statement to the police and returned to Samantha's apartment. Samantha testified that L.S. told her that appellant asked her to feed the dogs. L.S. said that she heard yelling in the master bedroom. L.S. kicked the door open and saw appellant on top of B.R. L.S. pushed appellant off of B.R. L.S. yelled, "How could you do this[?] Why are you doing this[?] I hate you[.] You're not my father."

After a 17-hour stand-off, police officers entered appellant's house and found appellant in bed with three of his children. Appellant was subdued and arrested.

Appellant testified that about 10 to 15 minutes after the girls went into L.S.'s bedroom he heard the sound of a lighter and smelled what he believed to be marijuana smoke coming from the room. He entered the bedroom and saw B.R. and L.S. on the bottom bunk of a bunk bed. B.R. was not wearing any pants or underwear. Appellant yelled at B.R., "This kind of crap does not go on in this house. Get the hell out of here." B.R. ran out of the house. She yelled, "Don't touch me, don't touch me." L.S. left the house shortly thereafter. He started to call 911 but changed his mind and ended the call before it connected. A while later, appellant heard sounds made by police officers and helicopters outside his house. He did not want to come outside until his wife had taken his three children and he communicated this to the police. He drank five or six rum and Pepsi drinks during the course of the evening and fell asleep with three of his children in his bed. He was awakened the next morning by police officers who

arrested him.

(Lodged Doc. 2 at 2-4.)

## III.    DISCUSSION

### A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a).  Accordingly, this Court has jurisdiction over the instant action.

### B.    Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by AEDPA provisions.

Under AEDPA, a person in custody under a judgment of a state court may only be granted a writ of habeas corpus for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); Williams, 529 U.S. at 375 n. 7. Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

1          1.      Contrary to or an Unreasonable Application of Federal Law

2          A state court decision is "contrary to" federal law if it "applies a rule that

3    contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

4    that [are] materially indistinguishable from [a Supreme Court case] but reaches a

5    different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at

6    405-06.  "AEDPA does not require state and federal courts to wait for some nearly

7    identical factual pattern before a legal rule must be applied . . . The statue recognizes . .

8    . that even a general standard may be applied in an unreasonable manner." Panetti v.

9    Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

10   "clearly established Federal law" requirement "does not demand more than a 'principle'

11   or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state

12   decision to be an unreasonable application of clearly established federal law under §

13   2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

14   (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-

15   71 (2003).  A state court decision will involve an "unreasonable application of" federal

16   law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at

17   409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).  In Harrington v. Richter, the

18   Court further stresses that "an *unreasonable* application of federal law is different from

19   an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011) (citing Williams, 529

20   U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

21   merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

22   correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541

23   U.S. 653, 664 (2004)).  Further, "[t]he more general the rule, the more leeway courts

24   have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S.

25   Ct. 1855, 1864 (2010).  "It is not an unreasonable application of clearly established

26   Federal law for a state court to decline to apply a specific legal rule that has not been

27   squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

28

1  (2009) (quoted by <u>Richter</u>, 131 S. Ct. at 786).

2             2.    <u>Review of State Decisions</u>

3        "Where there has been one reasoned state judgment rejecting a federal claim,

4  later unexplained orders upholding that judgment or rejecting the claim rest on the same

5  grounds." <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).  This is referred to as the

6  "look through" presumption.  <u>Id.</u> at 804; <u>Plascencia v. Alameida</u>, 467 F.3d 1190, 1198

7  (9th Cir. 2006).   Determining   whether   a   state   court's   decision   resulted   from   an

8  unreasonable legal or factual conclusion, "does not require that there be an opinion from

9  the state court explaining the state court's reasoning." <u>Richter</u>, 131 S. Ct. at 784-85.

10 "Where a state court's decision is unaccompanied by an explanation, the habeas

11 petitioner's burden still must be met by showing there was no reasonable basis for the

12 state court to deny relief." <u>Id.</u>  ("This Court now holds and reconfirms that § 2254(d)

13 does not require a state court to give reasons before its decision can be deemed to have

14 been 'adjudicated on the merits.'").  <u>Id.</u>

15       <u>Richter</u> instructs that whether the state court decision is reasoned and explained,

16 or merely a summary denial, the approach to evaluating unreasonableness under §

17 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

18 or theories supported or, as here, could have supported, the state court's decision; then

19 it must ask whether it is possible fairminded jurists could disagree that those arguments

20 or theories are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at 786.

21 Thus, "even a strong case for relief does not mean the state court's contrary conclusion

22 was unreasonable." <u>Id.</u> (citing <u>Lockyer v. Andrade</u>, 538 U.S. at 75).  AEDPA "preserves

23 authority to issue the writ in cases where there is *no possibility* fairminded jurists could

24 disagree that the state court's decision conflicts with this Court's precedents." <u>Id.</u>

25 (emphasis added).  To put it yet another way:

26             As a condition for obtaining habeas corpus relief from a federal
           court, a state prisoner must show that the state court's ruling on the claim
27         being presented in federal court was so lacking in justification that there
           was an error well understood and comprehended in existing law beyond
28         any possibility for fairminded disagreement.

1   Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

2   are the principal forum for asserting constitutional challenges to state convictions."  Id. at

3   787.   It follows from this consideration that § 2254(d) "complements the exhaustion

4   requirement and the doctrine of procedural bar to ensure that state proceedings are the

5   central process, not just a preliminary step for later federal habeas proceedings."  Id.

6   (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

7                    3.      Prejudicial Impact of Constitutional Error

8            The prejudicial impact of any constitutional error is assessed by asking whether

9   the error had "a substantial and injurious effect or influence in determining the jury's

10  verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

11  U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

12  state court recognized the error and reviewed it for harmlessness).   Some constitutional

13  errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v.

14  Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

15  (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

16  assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

17  Strickland prejudice standard is applied and courts do not engage in a separate analysis

18  applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

19  v. Lamarque, 555 F.3d at 834.

20  **IV.    REVIEW OF PETITION**

21          **A.    Ineffective Assistance of Counsel**

22          Petitioner contends that his rights under the Sixth and Fourteenth Amendments of

23  the United States Constitution were deprived by the alleged ineffective assistance of

24  counsel, based on trial counsel's (a) failure to object to improper introduction of evidence

25  that Petitioner's daughter ("Daughter") refused to testify against him; (b) failure to object

26  to improper introduction of hearsay statements made by Samantha Nelson; (c)  failure to

27  object to prosecutorial misconduct when prosecutor asked Daughter "is it true that your

28

1   mom and dad have tried to get you not to testify in this case"; and (d) failure to object to

2   prosecutorial misconduct when prosecutor repeatedly referenced Daughter's statements

3   about refusing to testify against her father, and generally referenced the existence of

4   other statements which were not admitted during trial.  (Pet. at 5.)  Petitioner also raises

5   ineffective assistance of counsel claims based on appellate counsel's (a) failure to raise

6   a claim of prosecutorial misconduct for disparaging defense counsel; (b) failure to raise

7   ineffective assistance of counsel claims about failures to object during the trial; and (c)

8   failure to petition for a rehearing after the Court of Appeal misstated a fact in its opinion.

9   (Id.)

10                  1.     Law Applicable to Ineffective Assistance of Counsel Claims

11          The law governing ineffective assistance of counsel claims is clearly established

12   for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).

13   Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas

14   corpus alleging ineffective assistance of counsel, the Court must consider two factors.

15   Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry

16   v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's

17   performance was deficient, requiring a showing that counsel made errors so serious that

18   he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

19   Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell

20   below an objective standard of reasonableness, and must identify counsel's alleged acts

21   or omissions that were not the result of reasonable professional judgment considering

22   the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

23   (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential. A court

24   indulges a strong presumption that counsel's conduct falls within the wide range of

25   reasonable professional assistance.  Strickland, 466 U.S. at 687; see also, Harrington v.

26   Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

27          Second, the petitioner must demonstrate that "there is a reasonable probability

28

1    that, but for counsel's unprofessional errors, the result ... would have been different."

2    Strickland, 466 U.S. at 694.  Petitioner must show that counsel's errors were "so serious

3    as to deprive defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  The

4    Court must evaluate whether the entire trial was fundamentally unfair or unreliable

5    because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1348; United

6    States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

7        A court need not determine whether counsel's performance was deficient before

8    examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

9    Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any

10   deficiency that does not result in prejudice must necessarily fail.  However, there are

11   certain instances which are legally presumed to result in prejudice, e.g., where there has

12   been an actual or constructive denial of the assistance of counsel or where the State has

13   interfered with counsel's assistance.  Id. at 692; United States v. Cronic, 466 U.S., at

14   659, and n. 25 (1984).

15       As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the

16   standard for ineffective assistance of counsel in federal habeas is extremely difficult:

17   
18       The pivotal question is whether the state court's application of the
     Strickland standard was unreasonable. This is different from asking
     whether defense counsel's performance fell below Strickland's standard.
19       Were that the inquiry, the analysis would be no different than if, for
     example, this Court were adjudicating a Strickland claim on direct review
20       of a criminal conviction in a United States district court. Under AEDPA,
     though, it is a necessary premise that the two questions are different. For
21       purposes of § 2254(d)(1), "an unreasonable application of federal law is
     different from an incorrect application of federal law." Williams, supra, at
22       410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a
     deference and latitude that are not in operation when the case involves
     review under the Strickland standard itself.
23   
24       A state court's determination that a claim lacks merit precludes
     federal habeas relief so long as "fairminded jurists could disagree" on the
25       correctness of the state court's decision. Yarborough v. Alvarado, 541
     U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this
26       Court has explained, "[E]valuating whether a rule application was
     unreasonable requires considering the rule's specificity. The more general
27       the rule, the more leeway courts have in reaching outcomes in case-by-
     case determinations." Ibid. "[I]t is not an unreasonable application of
28       clearly established Federal law for a state court to decline to apply a
     specific legal rule that has not been squarely established by this Court."

9

1    <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed.
     2d 251, 261 (2009) (internal quotation marks omitted).

2    <u>Harrington v. Richter</u>, 131 S. Ct. at 785-86.

3    "It bears repeating that even a strong case for relief does not mean the state

4    court's contrary conclusion was unreasonable." <u>Id.</u> at 786. "As amended by AEDPA, §

5    2254(d) stops short of imposing a complete bar on federal court relitigation of claims

6    already rejected in state proceedings." <u>Id.</u> "As a condition for obtaining habeas corpus

7    from a federal court, a state prisoner must show that the state court's ruling on the claim

8    being presented in federal court was so lacking in justification that there was an error

9    well understood and comprehended in existing law beyond any possibility for fairminded

10   disagreement." <u>Id.</u> at 786-87.

11   Accordingly, even if Petitioner presents a strong case of ineffective assistance of

12   counsel, this Court may only grant relief if no fairminded jurist could agree on the

13   correctness of the state court decision.

14                    2.    <u>State Court Decision</u>

15   Petitioner presented his claims of ineffective assistance of counsel by way of a

16   habeas petition to the Fresno County Superior Court. The claims were denied in a

17   reasoned decision by the Superior Court and summarily denied in subsequent habeas

18   petitions by the California Court of Appeal and California Supreme Court. (<u>See</u> Lodged

19   Docs. 3-8.) Since the California Supreme Court and California Court of Appeal both

20   denied the petition in a summary manner, this Court "looks through" those decisions and

21   presumes those courts adopted the reasoning of the Fresno County Superior Court, the

22   last state court to have issued a reasoned opinion. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S.

23   797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through" presumption

24   that higher court agrees with lower court's reasoning where former affirms latter without

25   discussion); <u>see also</u> <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th Cir. 2000)

26   (holding federal courts look to last reasoned state court opinion in determining whether

27   state court's rejection of petitioner's claims was contrary to or an unreasonable

28

application of federal law under 28 U.S.C. § 2254(d)(1)).

In denying Petitioner's claim, the Fresno County Superior Court explained that:

> With regard to petitioner's fist and second contentions, that his trial counsel failed to raise proper objections to the prosecutor's attempt to question petitioner's daughter about her refusal to testify and failed to object to questions about whether petitioner's daughter refused to testify due to pressure from her mother and father, the court notes that the Court of Appeal has already rejected petitioner's argument. In its unpublished opinion, the Court of Appeal found that petitioner forfeited his right to appeal the issue of the propriety of the prosecutor's examination of petitioner's daughter by failing to object on the basis of the Sixth Amendment, his right to a fair trial, or his right to due process. (*People v. James Martin Sanchez*, 2008 Cal.App. Unpub. LEXIS 5911, pp. 16-20.)

> However, the [Court of Appeal] also noted that, even if it were to consider the merits of the argument, petitioner did not suffer any prejudice from the admission of the daughter's statements. (*Id.* at pp. 20-22)

> > In any event, appellant was not prejudiced even under the stringent *Chapman* standard. (*Chapman v. California* (1967) 386 U.S. 18, 27.) Defense counsel had an unrestricted opportunity to examine Daughter on her refusal to testify and he availed himself of this opportunity. Testimony helpful to the defense was elicited during cross-examination, when Daughter testified that she told a person in the probation department that she was not sure what happened on the day in question. During the prosecutor's redirect examination, Daughter refused to answer any questions about this statement and denied being pressured by her parents to refuse to testify. Defense counsel declined to re-cross Daughter[.] Furthermore, Daughter's repeated statement during direct and redirect that she did not want to "testify against [her] father" is subject to multiple interpretations and does not establish that the content of Daughter's testimony would have mirrored B.R.'s testimony. Daughter was clear that she did not want to assist in the prosecution of her father by acting as a witness for the prosecution. Yet, she answered all questions posed to her by defense counsel. It was only the prosecutor's questions she refused to answer. During the prosecutor's redirect examination, Daughter said, "I'm not going to answer any more of *your* questions." (Emphasis added.) It is not apparent what the content of Daughter's testimony would have been if she had decided to comply with the court's instructions to answer the prosecutor's questions. Also, during closing arguments both parties used Daughter's testimony to their advantage. Finally, during defense counsel's oral argument supporting the new trial motion, he twice stated that Daughter's refusal

1
2
3
4

> to testify increased the possibility of an acquittal. Based on the entirety of the record, we find it is not reasonably possible that the jury would have returned a more favorable verdict if the court had restricted the prosecutor's examination of Daughter concerning the reason why she refused to testify or precluded reference to Daughter's refusal to testify during closing arguments. (Ibid.)

5
6
7

Generally, issues that have been resolved on appeal or, subject to special circumstances constituting excuse, which could have been resolved by a timely appeal will not be reconsidered on habeas corpus. (*In re Clark* (1993) 5 Cal.4th 750, 765—66.)

8
9
10
11

Here, the Court of Appeal directly addressed and rejected the precise arguments raised by petitioner, namely that the introduction of his daughter's testimony and the prosecutor's questions regarding her refusal to testify were a violation of his rights. Because the Court of Appeal found that there was no prejudice from the admission of the testimony, petitioner cannot attempt to reargue the issue by way of a writ of habeas corpus.

12
13
14
15
16
17
18
19
20

Petitioner also argues that his trial counsel should have objected to the admission of Samantha Nelson's hearsay testimony regarding his daughter's statement that "My dad tried to rape Briana" on the ground that admitting the hearsay statement violated his right to confront the witness and was more prejudicial than probative. (Evidence Code § 352.) However, petitioner has not stated any facts or cited any authorities demonstrating that the statement was inadmissible, or that admitting the statement was prejudicial to his defense. It appears that the statement was properly admitted under the "excited utterance" exception to the hearsay rule, and petitioner has not shown that an objection based on the confrontation clause or Evidence Code section 352 would have been likely to be sustained. Therefore, petitioner has not demonstrated that the failure to raise the objection was unreasonable, nor has he shown that his trial counsel's decision not to raise the objection was prejudicial to his defense.

21
22
23
24
25
26
27

Next, with regard to petitioner's third contention that his trial counsel failed to object to the prosecutor's improper emphasis in her closing argument of the daughter's statement that she did not want to testify against her father, the Court of Appeal has already found that the prosecutor's mention of the statement in her closing was not prejudicial. (*People v Sanchez*, *supra*, at p. 22.) Petitioner also claims that the prosecutor improperly referred to other statements allegedly made by the daughter that were not admitted into evidence at trial. While petitioner claims that his trial counsel was ineffective for failing to object to the remarks, he has not shown that the failure to object resulted in any actual prejudice to him. (*Strickland v. Washington* (1984) 466 U.S. 668, 690-692.)

28

"Generally, failure to make objections is a matter of trial tactics as to which we will not exercise judicial hindsight. [Citation omitted.] '[Counsel's]

conduct should not be judged by appellate courts in the harsh light of hindsight . . . and except in rare cases, and appellate court should not attempt to second-guess trial counsel.' [Citation.] 'It is not sufficient to allege merely that the attorney's tactics were poor, or that the case might have been handled more effectively… Rather, the defendant must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics.'" (*People v. Lanphear* (1980) 26 Cal.3d 814, 828-829, disapproved on other grounds by *People v. Balderas* (1985) 41 Cal.3d 144, 188.)

Here, the reference to the daughter's refusal to testify against her father was an accurate summary of her actual testimony during the trial and the statement about other remarks that the daughter made outside of court was not specific enough to lead to an inference that the remarks affected the jury's verdict. While the prosecutor did make reference to certain statements that the daughter made that were not admissible at trial, she never explained what those statements were or how they would shown the petitioner's guilt. She merely stated that the daughter had made statements and that she was going to come to court and tell the jury "what she saw her dad do." (Petitioner's brief, p. 22, lines 24-28, citing Court Transcript, Vol. 9, pp. 1186 and 1251.) Such vague statements do not show that the prosecutor attempted to bring in any actual out of court statements in her closing argument, nor do they show that the jury was actually influenced by such statements. Therefore, there was no prejudice from the trial attorney's failure to object to the statements.

Next, petitioner has argued that his appellate counsel was ineffective for failing to raise the misconduct of the prosecutor in making derogatory comments about defense counsel as part of the appeal. However, petitioner has again failed to show that he suffered any actual prejudice to his defense from the prosecutor's comments about his counsel. Petitioner has not presented any documents such as relevant portions of the trial transcript or copies of the new trial motion, opposition to the motion, and the trial court's order on that motion to allow the court to determine whether the prosecutor's statements resulted in prejudice to petitioner. A petition for writ of habeas corpus should include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations. (*In re Clark* (1993) 4 Cal.4th 750, 781, at fn. 16.)

Petitioner has not stated whether the trial court sustained or overruled the objection to the statements, or whether the court admonished the jury to disregard the statements. If the trial court sustained an objection to the statements and admonished the jury to disregard the statements, such a ruling would have likely cured any harm that the statements might have caused. The ruling would appear in the court transcript, which petitioner should have. Also, there should be a discussion of the issue in the new trial motion and opposition to the motion, and the trial court may have

1   discussed the issue in its order denying the motion for new trial. Without
2   relevant documentation, therefore, petitioner has failed to meet his burden
    of showing that the statements resulted in actual prejudice to him, or that
3   his appellate counsel acted unreasonably in failing to raise the issue in his
    appeal.

4   Petitioner also argues that his appellate counsel should have raised the
5   ineffectiveness of trial counsel in the appeal. However, as discussed
    above, petitioner has failed to show that any of trial counsel's actions or
6   inactions resulted in actual prejudice to him. Therefore, appellate counsel
7   was not ineffective for failing to raise trial counsel's allegedly ineffective
    conduct on appeal.

8   Finally, petitioner contends that appellate counsel was ineffective for
9   failing to bring to the appellate court's attention an error in the court's
    opinion in which the court stated that, "The prosecutor did not discuss [the
10  daughter's] testimony in her rebuttal argument." Petitioner claims that the
    prosecutor did in fact discuss the daughter's testimony at least twice in her
11  rebuttal argument, and appellate counsel should have petitioned for a
12  rehearing on this issue. However, petitioner has again failed to show that
    failing to move for a rehearing based on the alleged error in the Court of
13  Appeal's opinion was in any way prejudicial to his case. Even if the Court
    of Appeal erroneously stated that the prosecutor did not mention the
14  daughter's testimony in her rebuttal, petitioner has not explained how a
    petition for rehearing based on the error would have been likely to produce
15  a different result on appeal. The Court of Appeal had already found that
16  petitioner suffered no prejudice from the prosecutor's examination of the
    daughter, and that there was no harm from the prosecutor's mention of
17  her refusal to testify during closing arguments. (*People v. Sanchez*, *supra*,
    2008 Cal.App. Unpub. LEXIS at p. 22.) The fact that the prosecutor also
18  mentioned the daughter's refusal to testify during the rebuttal statement
    does not show any prejudice, since the court already found that the earlier
19  mention of the daughter's refusal to testify in the initial closing statement
20  was not prejudicial. Therefore, petitioner has failed to state a prima facie
    case for relief.

21  (Lodged Doc. 4 at 2-8.)

22          3.    Analysis

23      Here, giving the state court decision appropriate deference for each of Petitioner's

24  seven contentions, there is at least a possibility that fair-minded jurists could agree with

25  the state court decision that either counsel did not fall below an objective standard of

26  reasonableness or that Petitioner was not prejudiced by counsel's conduct.

27

28

a.      Claim One: Daughter's Testimony

Petitioner contends that once Daughter had established that her reason for her refusing to testify was something other than fear, defense counsel should have objected to any further questions.  (Pet. at 16.)  However, it is clear that defense counsel availed himself of the cross-examination of Daughter and elicited some favorable testimony because of it:

> Defense Counsel cross-examined Daughter. He asked Daughter if she was interviewed by someone from the probation department. When Daughter replied affirmatively, defense counsel asked, "And do you recall at any time in the interview saying something to the effect you're not sure what happened?" Daughter replied, "Yes." Defense counsel asked, "And you're not going to testify? You told both those things?" Daughter replied, "Yes." Defense counsel stated that he did not have any further questions.

(Lodged Doc. 2 at 6.)

Defense counsel also referenced the testimony to his advantage in closing argument stating:

> The first witness in this case was [L.S.] And, remember my opening statement. I said don't get into speculation and conjecture what's going on with [L.S.] Because [L.S.] said two things – she said three things. She said, "I don't want to testify. I don't want to testify against my dad. I don't want to tell the truth."

(Id. at 8.)

As such, fairminded jurists could agree on the correctness of the state court decision that Petitioner was not prejudiced by the failure of counsel to object to such testimony.   Petitioner has not shown that there was a reasonable probability of a different verdict had an objection been raised.  Moreover, defense counsel's decision not to object in order to obtain favorable testimony on cross-examination and to reference that testimony in closing argument could easily be seen as a tactical decision which a reasonably competent attorney could make.  Petitioner is not entitled to relief with regard to this claim.

1

b.      Claim Two: Samantha Nelson's Testimony

Petitioner contends that Samantha Nelson's testimony about the statements that daughter made on the night of the incident, including "My dad tried to rape Briana", were hearsay that was not objected to by defense counsel, and hence Petitioner lost his right to appeal those evidentiary issues. (Pet. at 17.)  The state court denied this claim in a reasoned decision stating:

> [P]etitioner has not stated any facts or cited any authorities demonstrating that the statement was inadmissible, or that admitting the statement was prejudicial to his defense. It appears that the statement was properly admitted under the "excited utterance" exception to the hearsay rule, and petitioner has not shown that an objection based on the confrontation clause or Evidence Code section 352 would have been likely to be sustained. Therefore, petitioner has not demonstrated that the failure to raise the objection was unreasonable, nor has he shown that his trial counsel's decision not to raise the objection was prejudicial to his defense.

(Lodged Doc. 4 at 4.)

Concurring with the state court, this Court finds that Petitioner has stated no reason as to why this objection could have been sustained.  The Superior Court found that the testimony was properly admitted as an excited utterance, and that there was no evidence of prejudice.  (Lodged Doc. 4 at 4.)  As stated in <u>Bradshaw v. Richey</u>, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  546 U.S. 74, 76 (2005).  Since the Superior Court made a determination based on state law, this Court cannot come to a different conclusion.  Thus, given that any objection to Samantha Nelson's statement would have been futile, fairminded jurists could agree with the state court decision that defense counsel did not commit any error, and Petitioner was not prejudiced. Petitioner is not entitled to relief with regard to this claim.

c.      Claim Three: Question of Why Daughter Was Not Testifying

Petitioner contends that defense counsel should have objected to the question: "is it true that your mom and dad have tried to get you not to testify in this case[?]"  (Pet. At

5.) Just like with claim one, the state court found that:

> [T]he Court of Appeal has already rejected petitioner's argument…[finding] that petitioner forfeited his right to appeal the issue of the propriety of the prosecutor's examination of petitioner's daughter by failing to object on the basis of the Sixth Amendment, his right to a fair trial, or his right to due process.

(Lodged Doc. 4 at 2.)

This reasoning does not address the issue of whether defense counsel was ineffective for failure to raise such a claim.  However, the state court also found that prejudice was not apparent from the admission of the testimony because defense counsel availed himself of the opportunity to cross-examine the witness and use that testimony in closing argument.  (See, *supra* Section IV(A)(3)(a).)

 Petitioner presents several arguments, including: that the prosecutor "may not…get before the jury what is tantamount to devastating direct testimony;" "prosecutors may not ask leading questions to create an irrefutable inference that a defendant has committed a crime through those questions;" that the prosecutor's questions were the "functional equivalent" of admission of evidence of threats which is "highly prejudicial;"  and that "[i]n the context of a trial, admission of evidence of threats without proof…is…grounds for an immediate mistrial."  (See Pet. at 18-19, 21) (citing People v. Rios 163 Cal.App.3d 852, 868-69 (1985) (internal citations and quotations omitted); (People v. Shipe 49 Cal.App.3d 343, 349-350 (1975)); People v. Weiss 50 Cal.2d 535, 554 (1958)).

Despite Petitioner's arguments, this Court cannot agree that the prosecutor elicited "devastating direct testimony" from Daughter.  It also seems improbable that an "irrefutable inference" of guilt was created by the prosecutor's questions.  Further, the question "is it true that your mom and dad have tried to get you not to testify in this case…" does not necessitate the conclusion that the prosecutor was eliciting the "functional equivalent" of threats.

1    Even if this Court strongly believed that the prosecutor's questions could be

2    construed as misconduct and that the failure to object infringed on due process by

3    prejudicing the fundamental fairness of the trial, that still would "not mean the state

4    court's contrary conclusion was unreasonable." Harrington v. Richter, 131 S. Ct. at 786.

5    Since the defense received an opportunity to cross-examine the witness after the

6    questions were asked, the witness was highly uncooperative with the prosecutor, and

7    the defense counsel used the daughter's testimony favorably in his closing argument, it

8    is at least possible that fairminded jurists could find that counsel's conduct did not fall

9    below an objective standard of care, or that Petitioner was not prejudiced by the

10   conduct.  Fairminded jurists could therefore agree with the correctness of the state court

11   decision, that a failure to object to these questions was not "so serious as to deprive

12   defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 487.

13   Petitioner is therefore not entitled to relief with regard to this claim.

14              d.      Claim Four: Improper Argument to the Jury

15   Petitioner contends that defense counsel should have objected to the

16   prosecutor's closing remarks which referred to statements made outside of court. (Pet.

17   at 5.)  Petitioner claims that "the prosecutor became a witness who effectively testified

18   that she knew facts that were not in evidence." (Id. at 24.)  However, the Superior Court

19   determined that:

20       Here, the reference to the daughter's refusal to testify against her father
21       was an accurate summary of her actual testimony during the trial and the
         statement about other remarks that the daughter made outside of court
22       was not specific enough to lead to an inference that the remarks affected
         the jury's verdict.  While the prosecutor did make reference to certain
23       statements that the daughter made that were not admissible at trial, she
         never explained what those statements were or how they would have
24       shown the petitioner's guilt. She merely stated that the daughter had made
         statements and that she was going to come to court and tell the jury "what
25       she saw her dad do." (Petitioner's brief, p. 22, lines 24-28, citing Court
         Transcript, Vol. 9, pp. 1186 and 1251.) Such vague statements do not
26       show that the prosecutor attempted to bring in any actual out of court
         statements in her closing argument, nor do they show that the jury was
27       actually influenced by such statements. Therefore, there was no prejudice
         from the trial attorney's failure to object to the statements.
28

18

(Lodged Doc. 4 at 6.)

The conclusion is not unreasonable, and fairminded jurists could agree on the correctness of the state court decision.  Therefore, Petitioner is not entitled to relief with regard to this claim.

e.   Claim Five: Disparaging Defense Counsel

Petitioner contends that appellate counsel should have raised an issue of prosecutorial misconduct due to the prosecutor's verbal attack on defense counsel in closing arguments.  (Pet. at 5.)  Petitioner cites <u>Bruno v. Rushen</u>, 721 F.2d 1193, 1194 (9th Cir. 1983), for the proposition that such an egregious attack on defense counsel can be enough to grant a writ of habeas.  The Superior Court denied this claim stating:

> Petitioner has not presented any documents such as relevant portions of the trial transcript or copies of the new trial motion…to allow the court to determine whether the prosecutor's statements resulted in prejudice to petitioner.

(Lodged Doc. 4 at 6.)

While Petitioner may not have properly presented this claim to the state court, this Court has access to the trial transcript, and will therefore make a determination of the Superior Court's decision based on that record, regardless of whether the claim was procedurally defaulted.

Although it is clear to this Court that the prosecutor's attack was disparaging of defense counsel, there were several efforts made by both the defense counsel and the court to remedy those remarks.  Defense counsel objected to the prosecutors remarks several times (Rptr's Tr. at 1246-49, 1255.)   After these objections the trial court reminded the jury that "statements of counsel are not evidence…This is argument…Whether…evidence has shown what counsel has argued, is for you, the jury, to decide."  (<u>Id.</u> at 1257-58.)  Both parties thereafter objected to each other's closing arguments rather vehemently.  (<u>Id.</u> at 1264-76.)  The trial court then admonished the jury to stay focused on the law and evidence and that both advocates "are emotional and

1    sometimes that emotion manifests itself in ways that…I'd prefer maybe it didn't…But I

2    want you to keep guided on the law, the facts, the evidence, and the reasonable

3    inferences that can be drawn from those facts." (Id. at 1278.)  Jurors are expected to

4    follow admonitions from judges along with jury instructions, so it is reasonable to

5    conclude that the jury would disregard the prosecutor's statements while weighing the

6    evidence. Hence, a reasonable jurist could agree that the state court decision was

7    correct in holding: "petitioner has failed to meet his burden of showing that the

8    statements resulted in actual prejudice to him." (Lodged Doc. 4 at 7.)  Petitioner is

9    therefore not entitled to relief with regard to this claim.

10                      f.      Claim Six: Ineffective Assistance of Appellate Counsel

11            Petitioner contends that appellate counsel was ineffective since he did not raise

12   ineffective assistance of counsel claims (regarding defense counsel) on the direct appeal

13   from the trial verdict.  The Superior Court found that "petitioner has failed to show that

14   any of trial counsel's actions or inactions resulted in actual prejudice to him. Therefore,

15   appellate counsel was not ineffective for failing to raise trial counsel's allegedly

16   ineffective conduct on appeal." (Lodged Doc. 4 at 7.)  This Court has come to the same

17   conclusions as to claims one through four, and therefore concurs in this reasoning.

18            Under California law, a petition for habeas corpus is the preferred method for

19   bringing an ineffective assistance of counsel claim because such a claim requires

20   consideration of evidence outside the trial record. People v. Salcido, 44 Cal. 4th 93, 79

21   Cal. Rptr. 3d 54, 186 P.3d 437 (2008) ("claims of ineffective-assistance of counsel

22   generally must be raised in a petition for writ of habeas corpus based on matters outside

23   the record on appeal"); People v. Mendoza Tello, 15 Cal. 4th 264, 267, 62 Cal. Rptr. 2d

24   437, 933 P.2d 1134 (1997) ("Because claims of ineffective assistance are often more

25   appropriately litigated in a habeas corpus proceeding, the rules generally prohibiting

26   raising an issue on habeas corpus that was, or could have been, raised on appeal would

27   not bar an ineffective assistance claim on habeas corpus.") (citations omitted).

28

1       Hence, a reasonable jurist could agree that the state court decision was correct

2 that appellate counsel was not ineffective for failing to raise these issues on direct

3 appeal.  Petitioner is therefore not entitled to relief with regard to this claim.

4          g.     Claim Seven: Petition for Retrial

5       Finally, Petitioner contends that appellate counsel was ineffective since he did not

6 petition the Court of Appeal for a retrial when it stated "[t]he prosecutor did not discuss

7 [the daughter's] testimony in her rebuttal argument."  (Pet. at 5-6.)  The Superior Court

8 determined that:

> 9   Petitioner has not explained how a petition for rehearing based on the
> 10 error would have been likely to produce a different result on appeal. The
> Court of Appeal had already found that petitioner suffered no prejudice
> 11 from the prosecutor's examination of the daughter, and that there was no
> harm from the prosecutor's mention of her refusal to testify during closing
> 12 arguments.

13  (Lodged Doc. 4 at 8) (Citing Lodged Doc. 2 at 13.)

14       Petitioner indicates that this conclusion was in reference to the prosecutor's "initial

15 closing statement" but does not mention the prosecutor's rebuttal.   (Pet. at 30.)

16 However, the Superior Court addressed this contention, holding that "the fact that the

17 prosecutor also mentioned the daughter's refusal to testify during the rebuttal statement

18 does not show any prejudice, since the court already found that the earlier mention of

19 the daughter's refusal to testify in the initial closing statement was not prejudicial."

20 (Lodged Doc. 4 at 8.)   This Court concurs with this reasoning, and finds that a

21 reasonable jurist could agree that the state court decision was correct.   Petitioner is

22 therefore not entitled to relief with regard to this claim.

23       As to all seven of Petitioner's claims, the state court did not apply any federal law

24 in a manner that was contrary to, or involved an unreasonable application of, the rule in

25 Strickland, nor did it base its holding on an unreasonable determination of the facts in

26 light of the evidence presented.  28 U.S.C. § 2254(d).

27 **IV.**    **RECOMMENDATION**

28       Accordingly, it is hereby recommended that the petition for a writ of habeas

corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   <u>August 2, 2013</u>                     <u>    /s/ Michael J. Seng</u>
                                                                    UNITED STATES MAGISTRATE JUDGE